## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| GAREY E. SEGER and | ) | |
| TWILA SEGER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | 8:08CV75 |
| LIBERTY MUTUAL INSURANCE, | ) | |
| | ) | |
| Intervenor, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| ERNEST-SPENCER METALS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the defendant Burns & McDonnell Engineering Company, Inc.'s Motion to Compel Production of Documents and Deposition Answers on Which Privilege is Claimed (Filing No. 213) and Motion to Compel Valmont Industries, Inc.'s Responses to Subpoena (Filing No. 230). The motions have been fully briefed and the court heard oral argument on November 5, 2009.

## BACKGROUND

This case arises from injuries Garey Seger sustained while working at Valmont Industries, Inc.'s (Valmont) galvanizing facility as a paddle operator. **See** Filing No. 49 - Amended Complaint. Mr. Seger used a metal paddle to skim ash off the top of a molten zinc bath at the end of the galvanization process. *Id.* ¶¶ 9, 13, 16. Two I-Beams fabricated, manufactured and/or designed by Ernest-Spencer Metals, Inc. (Ernest-Spencer) were dipped into the galvanizing kettle where Mr. Seger was working on December 13, 2006. *Id.* ¶¶ 11, 16-17. When Mr. Seger attempted to perform the skimming, the molten zinc unexpectedly flowed over the kettle causing third degree burns over 60% of Mr. Seger's body. *Id.* ¶ 18. Additionally, Mr. Seger suffered amputation of his left foot and part of his right, loss of fingers, multiple strokes, a heart attack, and other injuries due to the accident. *Id.*

The plaintiffs allege the defendants failed to use reasonable care to ensure the I-Beams that caused Mr. Seger's injuries were safe for their intended use (Claim I). *Id.* at 5. Additionally, the plaintiffs claim the defendants negligently failed to provide adequate warning about the beam's dangerous conditions (Claim II). *Id.* at 6. The plaintiffs allege Ernest-Spencer is strictly liable as a manufacturer or supplier (Claim III) and for failure to warn (Claim IV). *Id.* at 7. Twila Seger, Mr. Seger's wife, is also named as a plaintiff in the amended complaint. *Id.* ¶¶ 22-23.

Ernest-Spencer fabricates, manufactures and/or designs metal parts including I-Beams.[1] Tank Connection, LLC, designs and manufactures storage tanks. Roundtable Engineering Solutions, LLC (RTE), provides engineering and design services to the construction and engineering industries. Kirk Welding Supply Inc. (PraxAir Distr.) is an industrial gas and welding supply company. Burns & McDonnell Engineering Company, Inc. (Burns & McDonnell) is an engineering, architecture, and construction firm. Each of the defendants deny liability. **See** Filing No. 56 - Ernest-Spencer Answer; Filing No. 75 - Tank Connection Answer; Filing No. 80 - Kirk Welding Answer; Filing No. 82 - Burns & McDonnell Answer; Filing No. 124 - RTE Answer. For purposes of these pending motions, the defendants argue the defects in the subject beam did not cause the plaintiffs' injuries. The defendants contend improper maintenance and operation of the crane caused the zinc flow that injured the plaintiffs.

Ernest-Spencer previously attempted to add Valmont as a necessary party based on Valmont's payment of workers' compensation benefits. However, the court denied the motion. **See** Filing No. 42. Rather, Liberty Mutual, Valmont's insurer was added as an intervenor. *Id.*

## ANALYSIS

As a starting point, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents . . ." Fed. R. Civ. P. 26(b)(1).

---

[1] Ernest-Spencer is no longer a party to this litigation. **See** Filing No. 227.

However, "[t]he District Court does have discretion to limit the scope of discovery." *Credit Lyonnais v. SGC Int'l, Inc.*, 160 F.3d 428, 431 (8th Cir. 1998).  To determine if a matter is discoverable, the analysis requires the court to first determine whether the sought discovery is relevant to a claim or defense.  Accordingly, although limited, relevant evidence includes "any matter that could bear on, or that reasonably could lead to other matter that could bear on" the claims or defenses of any party.  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  "Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992).  "Determinations of relevance in discovery rulings are left to the sound discretion of the trial court and will not be reversed absent an abuse of discretion."  *Hayden v. Bracy*, 744 F.2d 1338, 1342 (8th Cir. 1984).

Once the requesting party meets the threshold relevance burden, generally "[a]ll discovery requests are a burden on the party who must respond thereto.  Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden." *Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 684-85 (D. Kan. 1991) (citation omitted).  The party opposing a motion to compel has the burden of showing its objections are valid by providing specific explanations or factual support as to how each discovery request is improper.  *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511-12 (N.D. Iowa 2000) (objecting party has the burden to substantiate its objections).  The party resisting discovery has the burden to show facts justifying its objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome.  **See** *Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 610 (D. Neb. 2001).  This imposes an obligation to provide sufficient detail and explanation about the nature of the burden in terms of time, money and procedure required to produce the requested documents.  **See** *id.*

In this instance, Rule 26 must be read consistently with Rule 45, which provides: "A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond

to the categories in the demand." Fed. R. Civ. P. 45(d)(1)(A).  The Federal Rules of Civil

Procedure provide a mechanism for a subpoenaed person to challenge the requirements

of a subpoena.  Fed. R. Civ. P. 45(c).  Specifically,

> On timely motion, the issuing court must quash or modify a
> subpoena that:
>> (i) fails to allow a reasonable time to comply;
>> (ii) requires a person who is neither a party nor a
>> party's officer to travel more than 100 miles from
>> where that person resides, is employed, or
>> regularly transacts business in person. . .;
>> (iii) **requires disclosure of privileged or other
>> protected matter, if no exception or waiver
>> applies**; or
>> (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(c)(3)(A) (emphasis added).  Similarly, Fed. R. Civ. P. 26(c) authorizes

the court to enter an order limiting discovery or imposing just terms on taking discovery to

protect a person or party from annoyance, embarrassment, oppression, or undue burden.

Generally, a subpoenaed party must respond with production or an objection to

production before the earlier of the time set forth for compliance or fourteen days.  **See**

Fed. R. Civ. P. 45(c)(2)(B).  Further "[t]he issuing court may hold in contempt a person

who, having been served, fails without adequate excuse to obey the subpoena."  Fed. R.

Civ. P. 45(e).  Under the discovery rules, "an evasive or incomplete disclosure, answer, or

response must be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P.

37(a)(4).

> A court of the United States shall have power to punish by fine
> or imprisonment, or both, at its discretion, such contempt of its
> authority, and none other, as--
>> (1) Misbehavior of any person in its presence or
>> so near thereto as to obstruct the administration
>> of justice;
>> (2) Misbehavior of any of its officers in their
>> official transactions;
>> (3) Disobedience or resistance to its lawful writ,
>> process, order, rule, decree, or command.

18 U.S.C. § 401.

4

Contempt may be imposed absent a finding of bad faith on the part of the contemnor. **See** *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 103 F.3d 1007, 1017 (D.C. Cir. 1997). "Indeed, . . . the [contemnor's] failure to comply with the court decree need not be intentional." *Id.* (internal citation and quotation omitted) (alteration in original); **see also** *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, (1949) ("The absence of wilfulness does not relieve from civil contempt . . . . Since the purpose is remedial, it matters not with what intent the [contemnor] did the prohibited act."). "A civil contempt action is characterized as remedial in nature, used to obtain compliance with a court order or to compensate for damages sustained as a result from noncompliance." *United States v. Shelton*, 539 F. Supp. 2d 259, 262 (D. D.C. 2008). A civil contempt may include fining or confining a contemnor indefinitely until he complies with an affirmative command. *Id.* at 262-63.

## A.   Motion to Compel Production of Documents Claimed Privileged

In support of Burns & McDonnell's Motion to Compel Production of Documents and Deposition Answers on Which Privilege is Claimed (Filing No. 213), Burns & McDonnell filed a brief (Filing No. 214) and an index of evidence (Filing No. 215), with some of the evidence filed under seal at Filing No. 217 - Ex. 11; Filing No. 218 - Ex. 13; and Filing No. 219 - Ex. 18.  Valmont filed a brief (Filing No. 238) and an index of evidence (Filing No. 239), with a substituted Ex. D found at Filing No. 240, Ex. 1, in opposition to the motion to compel.  Burns & McDonnell filed a brief (Filing No. 242) and an index of evidence (Filing No. 243) in reply.  No other party participated in the briefing of this motion.  At the hearing on the motion, however, other parties expressed an interest in joining Burns & McDonnell's arguments.

Burns & McDonnell moves the court to compel Valmont to (1) produce documents on which Valmont retroactively claimed attorney-client and work product privileges following an initial production, and (2) compel Valmont's witnesses to respond to deposition questions regarding those documents and the underlying facts regarding the December 13, 2006, incident.  **See** Filing No. 214 - Brief p. 2.  Specifically, Burns & McDonnell contend the documents and information sought are not privileged, but if they were

privileged, Valmont has waived such privilege through previous disclosure during discovery or disclosure to persons or entities other than Valmont and its attorneys. *Id.* Appended to Valmont's response brief is a document titled "Amended Schedule of Inadvertently Produced Privileged Documents by Valmont." **See** Filing No. 239 - Ex. A.

For purposes of this motion, Burns & McDonnell alleges the following facts. Valmont's counsel, McGrath North Mullen & Kratz PC LLO (McGrath North), began legal representation of Valmont at least by December 13, 2006. The same firm began legal representation of the plaintiffs by January 11, 2008. Valmont may have an interest "for reimbursement of the worker's compensation benefits paid directly by Valmont from any recovery realized by Seger from any third party claim." **See** Filing No. 23 Massey Aff. ¶ 6.

Following the December 13, 2006, incident, Valmont conducted an investigation initiated by Don Fritz, Regional Manager, Coatings, with Marv Broman, Director of Corporate Safety. Valmont conducted investigations for its own purposes and for an Occupational Safety and Health Administration "OSHA" investigation. On the morning of December 15, 2006, Valmont employees held a meeting about the December 13, 2006, incident. A Valmont employee recorded minutes for the meeting. Fourteen people attended the meeting, including Andrew Massey, Corporate Attorney for Valmont, and Roger Miller, an attorney with McGrath North.

On July 2, 2008, Ernest-Spencer issued a subpoena for documents on Valmont. **See** Filing No. 239 - Ex. D Massey Aff. ¶ 10; Ex. G June 22, 2009, Locher Letter. Valmont retained the Harding Schultz law firm for the purpose of responding to the subpoena. *Id.* Mr. Massey forwarded documents to Harding Schultz for processing. *Id.* Valmont relied on Harding Schultz for review of the documents and identification of all privileged documents. *Id.* Based on the work done by Harding Schultz, Mr. Massey transmitted a disc of documents to Ernest-Spencer. *Id.* ¶ 11. Valmont produced discovery in response to the subpoena on August 28, 2008; January 9, 2009; May 12, 2009; and May 29, 2009. **See** Filing No. 238 - Brief p. 5 n.5. The majority of documents, including the December 15, 2006, meeting minutes were produced on January 9, 2009. *Id.* at 5 & n.5.

On June 18, 2009, Valmont produced, through counsel from McGrath North, a privilege log identifying documents to be withheld from production in response to the

6

Ernest-Spencer subpoena. **See** Filing No. 239 - Ex. F June 18, 2009, Frost Letter and Privilege Log. On June 22, 2009, Ernest-Spencer notified Valmont that some of the documents listed on the June 18, 2009, privilege log had already been produced. *Id.* Ex. G June 22, 2009, Locher Letter p. 2 and listing of documents previously disclosed. By January 29, 2009, Valmont notified the parties that Valmont considered certain documents to be inadvertently disclosed and sought to prevent any further viewing or use of the documents by the parties. *Id.* Ex. H June 29, 2009, Frost Letter and Amended Privilege Log. Specifically, as part of a negotiation, Valmont sought the return of the December 15, 2006, meeting minutes, listed as Document No. 19 on the privilege log. *Id.* On July 23, 2009, and September 18, 2009, Valmont continued attempts to negotiate resolution of the dispute over the documents previously produced. *Id.* Ex. I (proposing return of the December 15, 2006, meeting minutes and the December 14, 2006, Don Fritz Report) & Ex. J. Despite receiving no response from any defendant regarding the July 23, 2009, letter, Valmont did not move the court for a protective order related to the documents. However, on October 1, 2009, Burns & McDonnell moved to compel production of the disputed documents and related deposition responses. **See** Filing No. 213.

A person opposing production of documents based on privilege or seeking protection for documents that are trial-preparation materials or fall under the attorney-client privilege has the burden of establishing the privilege applies. Fed. R. Civ. P. 45(d)(2)(A); **see *State ex rel. Stivrins v. Flowers*, 729 N.W.2d 311, 341 (Neb. 2007).** Specifically, the person asserting privilege "must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents, [or] communications . . . in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(d)(2)(A). Rule 501 of the Federal Rules of Evidence governs privileges in the federal courts. Accordingly, "[b]ecause this is a diversity case, the determination of whether attorney-client privilege applies is governed by state law." ***Union County, IA v. Piper Jaffray & Co., Inc.*, 525 F.3d 643, 646 (8th Cir. 2008);** Fed. R. Evid. 501.

In this case, the court need not address whether the documents themselves fall under any privilege, but assumes privilege applies. Valmont waived any privilege associated with the subject documents by failing to timely assert privilege and by voluntarily

and intentionally disclosing the documents during discovery.  Valmont failed to timely object or move to quash or modify the Ernest-Spencer subpoena.  In fact, Valmont failed to provide a privilege log of any kind until June 18, 2009, nearly one year after the subpoena had been issued, despite having provided responsive discovery documents since August of 2008.  In addition to failing to assert any privilege, Valmont actually produced specific documents for which privilege was later claimed.  For these documents, Valmont claims the privilege protects the documents due to inadvertent disclosure.

In this case, Valmont bears the burden of establishing the privilege and that a waiver, by disclosure or otherwise, did not occur.  *Kansas-Nebraska Natural Gas Co., Inc. v. Marathon Oil Co.*, 109 F.R.D. 12, 20 (D. Neb. 1985); **see** *United States v. Hatcher*, 323 F.3d 666, 675 (8th Cir. 2003).  In this circuit, "courts have generally followed one of three distinct approaches to attorney-client privilege waiver based on inadvertent disclosures: (1) the lenient approach, (2) the 'middle of the road' approach, which is also called the **Hydraflow** approach, and (3) the strict approach."  *Gray v. Bicknell*, 86 F.3d 1472, 1483 (8th Cir. 1996) (**citing** *Hydraflow, Inc. v. Enidine Inc.*, 145 F.R.D. 626, 637 (W.D.N.Y. 1993)).  The lenient approach, requiring knowing and intentional waiver, has been rejected by the Eighth Circuit for policy reasons.  *Id.*  Similarly, the strict approach, stripping privilege based on any production, is generally rejected.  *Id.*  The Eighth Circuit prefers the middle of the road approach in diversity cases, like the one at bar, where the state court is silent on the issue.  *Id.*; **see also** *Engineered Prods. Co. v. Donaldson Co., Inc.*, 313 F. Supp. 2d 951, 1021-21 (N.D. Iowa 2004).  Nebraska courts are thus far silent on this issue, however it is likely Nebraska courts would apply the middle of the road approach.  **See** Fed. R. Evid. 501; **see** *Daniels v. Allstate Indem. Co.*, 624 N.W.2d 636, 640-41 (Neb. 2001) ("A waiver is a voluntary and intentional relinquishment of a known right, privilege, or claim, and may be demonstrated by or inferred from a person's conduct."); **c.f.** *Kansas-Nebraska*, 109 F.R.D. at 19-21 (mere inadvertent disclosure did not waive the privilege).

Under the middle of the road approach:

> the court undertakes a five-step analysis of the unintentionally
> disclosed document to determine the proper range of privilege

> to extend.  These considerations are (1) the reasonableness
> of the precautions taken to prevent inadvertent disclosure in
> view of the extent of document production, (2) the number of
> inadvertent disclosures, (3) the extent of the disclosures, (4)
> the promptness of measures taken to rectify the disclosure,
> and (5) whether the overriding interest of justice would be
> served by relieving the party of its error.

*Gray*, 86 F.3d at 1483-84; **see** *Mendenhall v. Barber-Greene Co.*, 531 F. Supp. 951, 954-55 (N.D. Ill. 1982) ("A truly inadvertent disclosure cannot and does not constitute a waiver of the attorney-client privilege.  The issue for counsel and the court upon a claim of inadvertent disclosure must be whether the disclosure was actually inadvertent, that is, whether there was intent and authority for the disclosure.").

Under the circumstances of this case, Valmont failed to meet the burden of showing a privilege applies and that no waiver occurred.  This determination is based on each of the *Gray* factors under consideration.   The court has no evidence related to the precautions taken to prevent inadvertent disclosure other than reliance on the expertise of a law firm who is not currently representing the non-party.  **Compare** *Kansas-Nebraska*, 109 F.R.D. at 21 (relying on party's description of procedural screening employed for reviewing documents for privilege and holding "in all probability [disclosure was] not a deliberate act, or even the result of a conscious but erroneous decision").  Reliance on a law firm to advise a client about privilege is an insufficient basis to find inadvertent disclosure.  Many documents in this case were disclosed in error according to Valmont. This factor, despite the large volume of documents, weighs in favor of waiver.  Valmont argues prompt measures were taken to remedy the inadvertence once current counsel became aware of the disclosures.  However, no initial claim of privilege for any document was made prior to June, 2009, the disclosed documents had been circulated by the defendants for approximately six months prior to any claim of privilege, and Valmont never sought court assistance to protect the documents.  Valmont shows no overriding interest of justice would be served by relieving it of the errors.  In fact, Valmont sought to enforce the privilege with regard to only two documents in negotiations with the defendants. Accordingly, the court finds the evidence shows Valmont's disclosure of documents for which privilege was later claimed was knowing and intentional.   Therefore, Burns &

McDonnell's motion to compel is granted.  The subject deponents, therefore, are directed to respond to a line of questioning about the documents and about the December 16, 2006, meeting.


**B.     Motion to Compel Documents Pursuant to Subpoena**

In support of Burns & McDonnell's Motion to assure Valmont Industries, Inc.'s Responses to Subpoena (Filing No. 230), Burns & McDonnell filed a brief (Filing No. 232) and an index of evidence (Filing No. 233).  Valmont filed a brief (Filing No. 236) and an index of evidence (Filing No. 237) in opposition to the motion to compel.   Burns & McDonnell filed a brief (Filing No. 242) and an index of evidence (Filing No. 243) in reply. No other party participated in the briefing of this motion.  At the hearing on the motion, however, other parties expressed an interest in joining Burns & McDonnell's arguments.

In the motion, Burns & McDonnell seeks to compel complete responses to discovery requested in an August 21, 2009, subpoena pursuant to Fed. R. Civ. P. 45.  **See** Filing No. 233 - Ex. A Subpoena (served on September 9, 2009).  Valmont timely responded to the subpoena on September 22, 2009, by providing documents and listing objections.  **See** *id.* Ex. D.  The attorneys involved conferred on more than one occasion in an attempt to resolve their dispute over the objections and the amount of discovery produced.  **See** *id.* Ex. E and Ex. F.  In fact, the attorneys continued to attempt resolution until the day before the oral argument on the matter.

Generally, Burns & McDonnell seeks documents related to the identity of persons who inspected the subject I-Beams prior to the galvanizing process, the identity of persons working at Valmont on December 13, 2006, and information about Crane 862, the crane used during the galvanizing process.  **See** Filing No. 232 - Brief p. 3-4.  Burns & McDonnell argues the responses it received from Valmont are "incomplete, disorganized and fragmentary," and without any electronically stored information.  *Id.*  Burns & McDonnell now moves this court to overrule all Valmont's objections to assure complete, unambiguous responses.

In the course of the briefing and during oral argument, counsel for Valmont maintained it does not oppose production of the requested documents.  However, it is

Valmont's position that it has produced every responsive document in its possession. Specifically, Valmont asserts that no "job file" exists for the subject beam because the job was not completed.  Further, Valmont agreed to produce all production logs and hand-written crane maintenance logs, as requested.  With regard to electronically stored information, Valmont agreed to produce the Cyber Safety database to the extent is has not already done so.  Valmont stated it believed it had already produced all other time clock, payroll, parts requisition data, and invoices in its possession, but would continue to work with the defendants to determine whether there were absent documents.  Because Valmont agreed without limitation to produce the requested documents, Valmont waived any remaining objections to the requests for these documents.  Accordingly, Valmont shall supplement its responses as necessary.

The only production Valmont opposes relates to Request for Production Nos. 22 and 23.  In Request for Production No. 22, Burns & McDonnell seeks "All e-mail sent or received during November 2006 and December 2006, including all attachments, by any of the following individuals: [listing 13 individuals]."  **See** Filing No. 233 - Ex. D.  Request for Production No. 23 seeks:

> All e-mail created during 2006 or 2007 containing any of the following words, either as a whole word, or as part of a larger word:
>
> | | |
> |---|---|
> | a. | Kettle |
> | b. | Crane |
> | c. | 862 |
> | d. | 863 |
> | e. | 864 |
> | f. | Hoist |
> | g. | Zenar |
> | h. | Checo |
> | i. | Cable |
> | j. | Wire |
> | k. | Rope |
> | l. | Trolley |
> | m. | Controller |
> | n. | Telemotive |
> | o. | Magnetek |
> | p. | Boil |
> | q. | Vent |
> | r. | Seger |

11

  s.  Havekost
  t.  Ernest-Spencer
  u.  ESM
  v.  OSHA
  w.  ASTM
  x.  Burns & McDonnell

*Id.*

Valmont responded by objecting to both requests as follows.

> Valmont incorporates its General Objections. Valmont further objects as this Request is overly broad[, not limited to the relevant time period] and seeks documents which are neither relevant nor likely to lead to the discovery of admissible evidence. Valmont further objects as this Request seeks electronically stored information from sources which are not reasonably accessible and imposes undue burden and expense upon Valmont to conduct a review for documents responsive to this Request.

*Id.* (the bracketed language appears only in the objection to Request for Production No. 23). In addition, Valmont provided a supplemental response to each of these two requests by stating, "The burden and expense upon Valmont to search for electronically stored information responsive to this Request are set out in the attached affidavit of Glenn Leatherwood." **See** Filing No. 237 - Ex. 3 Supplemental Responses to Subpoena.

Burns & McDonnell argues the requests are narrowly tailored to the information needed. Further, Burns & McDonnell states it will help pay reasonable charges associated with obtaining the data, if the court sustains Valmont's objection about the burdensome nature of the requests. **See** Filing No. 232 - Brief p. 24-25. In fact, during the oral argument Burns & McDonnell offered to hire an independent consultant to cull the requested data as a means of decreasing any burden on Valmont.

Valmont maintains only two of its objections with regard to the email production. Valmont contends the requests are overly broad and production is time intensive and costly. **See, e.g.,** Filing No. 236 - Brief p. 10-12. Valmont provided the affidavit of Glenn Leatherwood, the Director of Information Technology Architecture for Valmont. **See** Filing No. 237 - Ex. 3 Supplemental Responses to Subpoena. Mr. Leatherwood describes the email system used by Valmont and the process necessary to access the data requested

12

by Burns & McDonnell.  *Id.* at 21-24.  Mr. Leatherwood states searches would be required on each person's shared network drive and existing hard drive.  *Id.* at 23.  Mr. Leatherwood estimates it would take "78 to 117 man-hours" to respond to Request for Production No. 22, alone.  *Id.* at 23-24.  Further, accomplishing the task would be disruptive to personnel and operations.  *Id.*  Mr. Leatherwood state he is unable to estimate the resources required to complete Request for Production No. 23 because of its breadth.  *Id.*  Based on these estimates, Valmont contends the burden shifts to Burns & McDonnell to show good cause for the requested information, which Burns & McDonnell has not done.  **See** Filing No. 236 - Brief p. 12.  Valmont argues most, if not all, of the relevant requested information has been produced, but the additional cost burden on Valmont should be borne by Burns & McDonnell.  *Id.*

Burns & McDonnell disputes the extent of any burden on Valmont for production of the requested emails.  Specifically, Burns & McDonnell took Mr. Leatherwood's deposition where Mr. Leatherwood explained the environment and process of obtaining and saving the information sought by Burns & McDonnell.  **See generally** Filing No. 243 - Ex. D Leatherwood Depo.  Mr. Leatherwood testified there are less than 1,000 computers and five exchange servers at the Valmont location in question.  *Id.* at 22-23, 56-57.  However, not all of the Valmont employees have email accounts.  *Id.* at 23.  Mr. Leatherwood explained the actual time required to obtain the information sought for each user listed would depend on the amount of information (emails) possessed by each user.  *Id.* at 179-80, 229-31.  At that time, Mr. Leatherwood did not have detailed information about how much information each of the users in Request for Production No. 22 possessed, but he could easily access such information.  *Id.* at 50, 54-55.  Without viewing individual user information, Mr. Leatherwood's estimates were based on assumptions about the average Valmont user.  *Id.* at 230.  Additionally, Mr. Leatherwood explained his initial estimate of six to nine hours per user includes several hours for manual activities because he does not trust the margin of error in the software (estimating two to three hours as opposed to one to several minutes) and organizing the CD after copying the information (estimating one

to two hours as opposed to minutes).  *Id.* at 226-29, 231.[2]  Moreover, part of the estimated time accounted for processing by the computer for which the technician need not be involved.  *Id.* at 178-79 (noting indexing may take a couple of hours for each user, but if a dedicated machine were used the technician could engage in other tasks).  Further, the Valmont IT department has conducted other email searches of 35 and 100 boxes, respectively, for other reasons without overwhelming the department.  *Id.* at 222-23 (noting technicians were taken off of other projects).

Based on the facts presented, the court evaluates the legal burden imposed on each interest.  As an initial matter, Burns & McDonnell maintains its burden of showing the information sought is relevant in some respects.  The court finds the burden is met with regard to Request for Production No. 22.  In contrast, Burns & McDonnell failed to meet its burden with regard to each of the twenty-four proposed search terms in Request for Production No. 23.  During oral argument, counsel for Burns & McDonnell indicated there were only "a dozen or so" terms and the most important issues were related to Crane 862, Zenar, Checo, and crane maintenance.  Further, counsel began to suggest methods to narrow the terms or defray the cost for Valmont.  Without specific reasons given, the court finds Burns & McDonnell has failed to meet its burden of showing the searches are relevant and not overly broad, under the circumstances and regardless of any burden to Valmont.  The court finds Burns & McDonnell has met its burden only with regard to the following search terms:  Crane 862, hoist, Zenar, Checo, cable, Seger, Havekost, Ernest-Spencer, ESM, ASTM, and Burns & McDonnell.

Finding Burns & McDonnell has met its burden for seeking relevant information, the court will evaluate Valmont's objections to production.  The court finds Valmont has waived all of its "General Objections" and those objections not discussed or pursued as part of the briefing and arguments associated with the pending motions.  Valmont relies only on the undue burden caused by the time consuming and expensive searches sought in Request for Production Nos. 22 and 23.  **See** Filing No. 236 - Brief p. 8-12.

---

[2] During the deposition and oral argument, counsel for Burns & McDonnell indicated a willingness to forego the manual quality control and organization efforts of IT staff.  **See** *id.* at 228-29, 231.

Valmont fails to meet its burden of showing that responding to Request for Production No. 22 creates an undue burden. Valmont provided the court with general descriptions of methods used to obtain the information for the average email user. However, Valmont failed to provide any information about the specific people associated with Request for Production No. 22, for example whether the people listed have email accounts with Valmont or the size of any exchange mailbox. Such information, which Valmont already has easy access, would have made the time and expense estimates relevant to the actual request, rather than merely speculative and based on the average email user. In any event, the court finds Valmont's time estimates are overstated based on Mr. Leatherwood's decision to include several extra hours for manual quality control and organizing the data, particularly given Burns & McDonnell's counsel's indication that those activities are unnecessary. Under these circumstances, Valmont shall supplement its response to Request for Production No. 22 to include the nonprivileged information requested. However, Valmont shall include an affidavit from the person or people involved to describe the process used excluding manual quality control and organization of the data, unless Valmont and Burns & McDonnell are able to agree on terms or compensation for the extra time involved.

Additionally, Valmont fails to meet its burden of showing that responding to Request for Production No. 23 creates an undue burden. Valmont merely makes conclusory statements that it "does not possess the manpower or resources required to accomplish a search across and within its entire business enterprise for particular terms within 'all email created during 2006 or 2007.'" **See** Filing No. 237 - Ex. 3 Supplemental Responses to Subpoena, Leatherwood Aff. ¶ 11. Rather, Valmont seeks limitations with regard to specific users or a subset of dates. *Id.* In the alternative, Valmont seeks to shift the burden of any costs associated with the searches to Burns & McDonnell. *Id.*

The court finds narrowing of search terms, as described above, provides the only necessary limitations on Request for Production No. 23. However, it is impossible at this time based on the information before the court to determine the cost involved. Burns & McDonnell has offered to hire an independent consultant to cull the requested data as a means of decreasing any burden on Valmont. The court will leave the details of any cost-

15

shifting solutions to Burns & McDonnell and Valmont.  If counsel are unable to resolve the matter after a more accurate estimate of cost is established, the court will resolve the issue upon appropriate motion.  With these limitations, Valmont shall supplement its response to Request for Production No. 23 to include the nonprivileged information requested only as to search terms: Crane 862, hoist, Zenar, Checo, cable, Seger, Havekost, Ernest-Spencer, ESM, ASTM, and Burns & McDonnell.

## C.   Contempt

The court finds Valmont should not be held in contempt.  Valmont's conduct with regard to production in response to the Ernest-Spencer subpoena does not constitute a failure "without adequate excuse to obey the subpoena."  Further, under the circumstances, the court declines to award Burns & McDonnell sanctions of any kind. Upon consideration,

**IT IS ORDERED:**

1.    Burns & McDonnell Engineering Company, Inc.'s Motion to Compel Production of Documents and Deposition Answers on Which Privilege is Claimed (Filing No. 213) is granted.

2.    Burns & McDonnell Engineering Company, Inc.'s Motion to Compel Valmont Industries, Inc.'s Responses to Subpoena (Filing No. 230) is granted in part and denied in part.  On or before **February 17, 2010**, absent an objection to this order pursuant to NECivR 72.2, Valmont shall supplement its responses to requests for production as follows.

a.    Valmont shall supplement its responses to requests for production regarding any previously undisclosed yet responsive production logs, handwritten crane maintenance logs, Ernest-Spencer job files, the Cyber Safety database, and time clock, payroll, invoice, and parts requisition information electronically stored.  Valmont's objections to the requests related to these items are overruled.

16

b.    Valmont shall supplement its responses to Request for Production Nos. 22 and 23 as described above.

## ADMONITION

Pursuant to NECivR 72.2 any objection to this Order shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Order.  Failure to timely object may constitute a waiver of any objection.  The brief in support of any objection shall be filed at the time of filing such objection.  Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 26th day of January, 2010.

BY THE COURT:


 s/ Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.