# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| GAREY E. SEGER AND TWILA SEGER, Husband and Wife, | ) ) ) |
| Plaintiffs, | ) 8:08CV75 ) |
| vs. | ) ORDER ) |
| TANK CONNECTION, LLC, ROUNDTABLE ENGINEERING SOLUTIONS, LLC, KIRK WELDING SUPPLY, INC., and BURNS & MCDONNELL ENGINEERING COMPANY, INC. | ) ) ) ) ) ) ) |
| Defendant. | ) ) |

This matter is before the court on the motion of defendant Roundtable Engineering Solutions, LLC, (Roundtable) (Filing No. 371)[1] to Compel Plaintiff Garey Seger's Answers to Interrogatories. The defendant filed a brief (Filing No. 351) and an index of evidence (Filing No. 349) in support of the motion. The plaintiffs filed a brief in opposition to the motion (Filing No. 363). Roundtable filed a reply brief (Filing No. 365) and index of evidence (Filing No. 366) in support of its motion.

## BACKGROUND

This case arises as a result of the plaintiff, Garey Seger (Mr. Seger), receiving extensive injuries while employed by Valmont Industries, Inc. (Valmont). The plaintiffs filed a Complaint in the District Court of Douglas County against Ernest-Spencer Metals, Inc. (Ernest-Spencer) on January 16, 2008. **See** Filing No. 1 - Notice of Removal. Ernest-Spencer is a Kansas Corporation engaged in the business of fabricating, manufacturing and/or designing metal parts including steel I-beams. **See Id.** - Ex. 1, Complaint. Defendant Ernest-Spencer removed the case to the United States District Court for the

---

[1] The defendant originally filed the motion at Filing No. 348, but inadvertently filed the index of evidence instead of the motion. Filing No. 348 was striken and Filing No. 371 replaces it.

District of Nebraska on February 15, 2008.  **See** Filing No. 1 - Notice of Removal.  On October 13, 2008, the plaintiffs filed an Amended Complaint (Filing No. 49) naming Ernest-Spencer, Tank Connection, LLC (Tank Connection), Roundtable, Kirk Welding Supply, Inc. (Kirk Welding) and Burns & McDonnell Engineering Company, Inc. (Burns & McDonnell) as defendants.  Ernest-Spencer was terminated as a defendant on October 6, 2009, with the court's order of dismissal pursuant to a settlement agreement between the parties.  **See** Filing No. 227.

According to the amended complaint, the case arises from a December 13, 2006, incident in which Mr. Seger sustained life threatening injuries while engaged in the galvanization of two defectively designed large steel I-beams.  **See** Filing No. 49, ¶¶ 9-10.  The I-beams are approximately 19 feet in length and together weigh approximately 22,000 pounds.  **Id.** at ¶ 10.   The I-beams were manufactured, fabricated and welded together by Ernest-Spencer.  **Id.** at ¶ 11.  Tank Connection, Roundtable, and Burns & McDonnell provided the design and engineering specifications for the I-beams.  **Id.**  Kirk Welding was engaged to inspect the I-beams.  **Id.**  All defendants knew the I-beams were to be galvanized.  **Id.**  The process of galvanizing provides steel with protection from corrosion and involves the immersion of the steel product into a tank of molten zinc between 815° to 850° Fahrenheit.  **Id.** at ¶ 13.  Mr. Seger believes the I-beams failed to have proper and sufficient venting and/or were improperly welded or designed as to trap air and moisture and cause destructive pressures when subjected to the galvanizing temperature.  **Id.** at ¶ 15.

Mr. Seger was employed at Valmont's galvanizing facility as a paddle operator.  **Id.** at ¶ 16.  His duties included working with a crane operator who would use a crane to lower the product to be galvanized into a tank of molten zinc.  **Id.**  As a paddle operator, Mr. Seger's job was to use a metal paddle to skim ash off the top of the zinc bath toward the end of the galvanization process so as to ensure the quality of the product.  **Id.** at ¶ 16.  On or about December 13, 2006, after the I-beams had been lowered into the molten zinc kettle for the prescribed time, a wave of molten zinc unexpectedly erupted from the kettle and splashed onto Mr. Seger, causing severe and extensive injury to him.  **Id.** at ¶ 17.  Despite his wearing personal protective equipment, Mr. Seger was badly burned by the

molten zinc, causing third degree burns to at least 60% of his body, the amputation of his left foot, as well as part of his right foot, the loss of fingers on both hands, multiple strokes and a heart attack, along with pain suffering, disability, scarring, and embarrassment. **Id.** at ¶ 18. Mr. Seger claims he has incurred lost wages in excess of $23,000, and medical bills in excess of $5 million. **Id.** at ¶¶ 19, 20. Mr. Seger's wife, Twila, joins in the lawsuit for the loss of care, comfort, society and companionship of her husband due to his injuries. **Id.** at ¶ 22. Mr. Seger alleges the defendants failed to use reasonable care to see that the I-beams were manufactured, designed, fabricated and welded in such a manner that they could be safely galvanized. **Id.** at ¶ 27. In its answer, Roundtable generally admitted that portions of the structural design and engineering for the subject I-beams were provided by Roundtable and prepared in accordance with industry standards. **See** Filing No. 124, ¶¶ 11, 42. Roundtable specifically denied that its scope of work included any decision making with regard to galvanizing the I-beams or specifications therefor. **Id.** at ¶ 11.

On March 31, 2010, defendant Roundtable filed the instant motion to compel Mr. Seger's responses to interrogatories. **See** Entry No. 348, Striken, and replaced with Filing No. 371. According to the motion, Mr. Seger has refused to provide information requested regarding his enrollment in Medicare Part A or B. **Id.** at 1. On or about February 1, 2010, Roundtable sent interrogatories to Mr. Seger requesting certain information about his receipt of Medicare and Social Security benefits. **See** Filing No. 351 - Brief, p. 1. Roundtable claims it is requesting this information in order to aid its insurer in complying with the Medicare, Medicaid and SCHIP Extension Act of 2007 (Extension Act), and to facilitate discovery information regarding the plaintiffs' damages. **Id.** Mr. Seger responded to the interrogatories on March 12, 2010, but failed to provide much of the information requested, and objected to certain interrogatories on the grounds they are irrelevant, immaterial, and not calculated to lead to the discovery of admissible evidence. **Id.** Mr. Seger also alleged there is no mandatory reporting obligation under the Medicare law unless the defendant accepts liability, and that Social Security Disability benefits are a collateral source and inadmissible. **Id.** at 2-3. On March 25, 2010, Roundtable sent a letter to plaintiffs' counsel requesting supplemental answers to the interrogatories. **Id.** at

3. On March 30, 2010, Roundtable received supplemental, yet still incomplete, answers from the Mr. Seger. **Id.**

Roundtable argues the evidence sought is admissible and relevant to its claim or defense under Fed.R.Civ.P. 26(b)(1). **Id.** Roundtable states that under the Social Security Act, commonly known as the Medicare Secondary Payer Statute, Medicare has a right of recovery against any entity responsible for making payment under a primary plan for medical services rendered to a Medicare beneficiary. **See** 42 U.S.C. § 1395y(b)(2)(B)(iii); **Id.** at 4. A primary plan includes liability policies. **See** 42 U.S.C. § 1395y(b)(2)(A); **Id.** Under Section 111 of the Extension Act, Responsible Reporting Entities (RREs), including liability insurers, are required to secure information from a Medicare beneficiary and report that information to the federal agency that oversees the Medicare program. **See** 42 U.S.C. § 1395y(b)(7) and (8); **Id.** As the plaintiff notes, the information "shall be submitted. . . within a time specified by the Secretary after the claim is resolved through a settlement, judgment, award or other payment (regardless of whether or not there is a determination or admission of liability)." **Id.** Roundtable claims the information sought may lead to admissions, medical findings or other evidence admissible at trial and, further, that without this information, Roundtable (and its insurer) will have difficulty evaluating plaintiffs' claims as they do not have access to the amount Medicare has paid for the Mr. Seger's care. **See** Filing No. 351, p. 5. Roundtable is attempting to determine what amounts, if any, its insurer may later be required to pay to Medicare under the Secondary Payer statute, and determine what an appropriate settlement amount, if any, might be. **Id.** Finally, Roundtable argues that although liability insurers do not have to submit beneficiary information under the Extension Act until after a judgment has been rendered, they may not be able to obtain the required reporting information from Mr. Seger as he would have no incentive to provide the information post-judgment. **Id.**

In opposition to the motion, Mr. Seger acknowledges he is enrolled in Medicare Part A, but declined to give his Medicare claim number or a copy of his Medicare card. **See** Filing No. 363, p. 2. Mr. Seger has advised he is not on Medicaid. **Id.** The plaintiffs rely on Roundtable's brief to note that Medicare information of a claimant or beneficiary is not required to be provided until "after the claim is resolved through a settlement, judgment,

award or other payment." **See** 42 U.S.C. § 1395y(b)(8), **Id.** at 2.  Roundtable is attempting to use federal discovery rules to obtain Mr. Seger's Medicare information on behalf of its insurer. **Id.** at 2.  Further, the plaintiffs take issue with Roundtable's request for Medicare information under the guise of determining plaintiffs' damages.  **Id.** at 3.  Mr. Seger is receiving workman's compensation benefits to cover his medical costs, but such costs are not covered by Medicare, nor would they be subject to any Medicare lien. **Id.**  The plaintiffs have provided, pursuant to interrogatories and document requests, all of Mr. Seger's medical records since the time of his injury in addition to his work history records. **Id.**  The plaintiffs believe Roundtable has ample information to assess damages based on those records.  **Id.**  Additionally, Mr. Seger was examined by Dr. Katz, who conducted a comprehensive review of his medical records and provided an assessment of Mr. Seger's medical damages to the defendant.  **Id.**  The records, along with the medical assessment, and the plaintiffs' deposition on December 10, 2009, provided the defendant ample opportunity to inquire as to Mr. Seger's disability from his injury, according to the plaintiffs. **Id.**  In regards to his social security information, Mr. Seger answered during his deposition on December 10, 2009, the exact amount he receives in social security and workman's compensation benefits.  **Id.**  Therefore, the plaintiffs argue, Roundtable's request for this information should be satisfied.  **Id.** at 4.

In reply, Roundtable argues the plaintiffs failed to demonstrate how the requested information is irrelevant.  **See** Filing No. 365 - Reply Brief, p. 2-3.  Further, the defendant argues plaintiffs failed to demonstrate how the information currently sought is duplicative of what has already been provided. **Id.** at 3.  Additionally, Roundtable argues that although Mr. Seger has provided an itemization of his medical expenses to the defendant, the itemization is merely a list of charges, and provides no direction as to which expenses have been paid, and no indication as to whether some of the records relate to pre-injury expenses.  **Id.** at 4.  Roundtable anticipates that the Medicare and Social Security information, when provided, will lead to the discovery of information related to the amount of medical expenses paid on Mr. Seger's behalf, and the care that Mr. Seger received prior to the accident.  **Id.**   All of this, they believe, is relevant to Roundtable's evaluation of the extent of damages in this case. **Id.**  Finally, Roundtable argues that although it can retrieve

the requested information through other discovery means, Fed.R.Civ.P. 26(d)(2) provides that, unless otherwise specified by a court, methods of discovery may be used in any sequence. **Id.**

## ANALYSIS

In December, 2007, the Medicare, Medicaid and SCHIP Extension Act of 2007 (Extension Act) was signed into law. **See** Pub. L. No. 110-173; 42 U.S.C. § 1395y(b)(7) and (8). Section 111 of the Extension Act adds new mandatory reporting obligations to the Medicare Secondary Payer Act ("MSPA") requiring group health plans, liability insurers and self-insurers to provided detailed information regarding all liability settlements or open claims with ongoing responsibility for medical treatment with Medicare beneficiaries to the Centers for Medicare and Medicaid Services ("CMS").[2] CMS uses this information to identify situations where a plan or program is primary to Medicare under Medicare's "Secondary Payer" rules. By imposing this mandatory reporting requirement on Responsible Reporting Entities (RREs), Medicare hopes to increase its ability to identify individuals who received Medicare payments. RREs include group health plans, liability insurers, no-fault insurers, workers' compensation insurers and individuals or entities engaged in a business which are self-insured, are responsible for deductibles, or otherwise make direct payments for settlements. The Extension Act creates enhanced reporting requirements, not new ones. The new reporting requirements affect all parties involved in a payment of a settlement, judgment or award with a Medicare beneficiary after January 1, 2010. **See** 42 U.S.C. § 1395y(b)(2)(A); 42 C.F.R. § 411.50.

Until now, insurers wishing to comply with the CMS policy were often at the mercy of a plaintiff or claimant for information concerning Medicare entitlement, usually through a signed consent form from the claimant. Anticipating the burden of the new reporting requirements, CMS has developed a "query process" whereby an RRE can determine a claimant's Medicare status electronically, and without authorization, as long as the RRE

---

[2] Applicable statutory provisions may be found at 42 U.S.C. § 1395y(b)(7) and (8), and regulations in the Code of Federal Regulations at Title 42, Part 411 - Exclusions from Medicare and Limitations on Medicare Payment.

has access to the claimant's name, date of birth, gender and Social Security number or Medicare Health Insurance Claim Number.[3] Based on the law, primary payers must notify Medicare of claimants who are entitled to Medicare benefits and have received or will receive payments from the primary payer. The information must be submitted "after the claim is resolved through a settlement, judgment, award or other payment (regardless of whether or not there is a determination or admission of liability)." **See** 42 U.S.C. § 1395y(b)(8)(C). Entities who fail to report are subject to a $1,000 daily fine for late reporting. **See** 42 U.S.C. § 1395y(b)(7)(B).

The following interrogatories are those to which the plaintiff proffered objections, as set forth above:

> Interrogatory No. 4: If the answer [to Interrogatory No. 3 regarding enrollment in Medicare] is in the affirmative, state the following:
> a.   Medicare Claim Number;
> b.   Social Security Number;
> c.   Date of Birth;
> d.   Sex;
> e.   Current address; and
> f.   Attach a true and correct copy of your Medicare or Medicaid card.
>
> Interrogatory No. 9: Attached to these Interrogatories is a Social Security Administration Consent of Release for Information. Will you consent to release of the Social Security Administrator information? If so, sign the Consent for Release of Information and return same to counsel for defendant Roundtable Engineering Solutions, LLC.

**See** Filing No. 349-6  - Index in Support of Motion - Garey E. Seger's First Supplemental Answers to Defendant Roundtable's Interrogatories.

Parties may discover any relevant, unprivileged information that is admissible at trial or is reasonably calculated to lead to admissible evidence. **See** Fed. R. Civ. P. 26(b)(1). Relevancy is to be broadly construed for discovery issues and is not limited to the precise

---

[3] The Social Security Number or Health Insurance Claim Number is essential to the administration of the Medicare program. Collection of the SSNs for the purpose of coordinating benefits with Medicare is a required, legitimate and necessary use of the SSN under federal law and is thus permitted by HIPPA. See McIntosh Sawran Peltz & Cartaya, P.A., Client Alert: Medicare's Section 111 Mandatory Reporting Program, endnote 5.

issues set out in the pleadings.  Relevancy, for purposes of discovery, has been defined by the United States Supreme Court as encompassing "any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  Discovery requests should be considered relevant if there is any possibility the information sought is relevant to any issue in the case and should ordinarily be allowed, unless it is clear the information sought can have no possible bearing on the subject matter of the action.  **See** *Burlington Ins. Co. v. Okie Dokie, Inc.*, 368 F. Supp. 2d 83, 86 (D. D.C. 2005).  The proponent of discovery must make a threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required.  *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1993).

Once the requesting party meets the threshold relevance burden, generally "[a]ll discovery requests are a burden on the party who must respond thereto.  Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden." *Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 684-85 (D. Kan. 1991) (citation omitted).  The party opposing a motion to compel has the burden of showing its objections are valid by providing specific explanations or factual support as to how each discovery request is improper.  *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511-12 (N.D. Iowa 2000) (objecting party has the burden to substantiate its objections). Bare assertions that discovery requested is overly broad, unduly burdensome, oppressive or irrelevant are ordinarily insufficient to bar production.  *Id.*  "The party resisting discovery must show specifically how . . . each interrogatory [or request for production] is not relevant or how each question is overly broad, burdensome or oppressive."  *Id.* (citations omitted).  The party resisting discovery has the burden to show facts justifying its objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome.  **See** *Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 610 (D. Neb. 2001).  This imposes an obligation to provide sufficient detail and explanation about the nature of the burden in terms of time, money and procedure required to produce the requested documents.  **See** *Id.*  The District Court has discretion to limit the scope of

discovery if it has a good reason to do so. *Credit Lyonnais v. SGC Int'l, Inc.*, 160 F.3d 428, 431 (8th Cir. 1998).

Further, Federal Rule of Civil Procedure 33 provides:

> An interrogatory may relate to any matter that may be inquired into under Rule 26(b). An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.

Fed. R. Civ. P. 33(a)(2).

Based on the foregoing, the court finds the defendant, Roundtable, has met its burden of proving the relevance of the requested information. Although the Extension Act does not require this information be submitted to CMS until after a final settlement or judgment is issued, there is no harm to the plaintiffs in providing the information sooner. The court does not agree that this information is necessary to negotiate a settlement. The defendant does need to know what the outer limits of Mr. Seger's medical expenses might be even though that information can be gleaned from medical records already provided. Mr. Seger has not met his burden of proving that providing the requested information is unduly burdensome. To the contrary, he has simply refused to provide the information. As Mr. Seger will be required to provide the requested information eventually, and as providing the information could reasonably bear on the issues in the case, the court finds Mr. Seger should respond to Interrogatories Nos. 4 and 9 to the extent he must provide identifying information along with either his Medicare Health Insurance Claim Number or his Social Security Number in order that Roundtable's insurance company may comply with the Extension Act. Upon consideration,

**IT IS ORDERED:**

1.      Defendant Roundtable's Motion to Compel (Filing No. 371) is granted to the extent that Mr. Seger shall provide either his Medicare Health Insurance Claim Number or his Social Security Number, and other identifying information, in answer to the Interrogatories.

2. Mr. Seger shall have until **on or before May 5, 2010** to respond to the Interrogatories.

## ADMONITION

Pursuant to NECivR 72.2 any appeal of this Order shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Order. Failure to timely appeal may constitute a waiver of any objection to the Order. The brief in support of any appeal shall be filed at the time of filing such appeal. Failure to file a brief in support of any appeal may be deemed an abandonment of the appeal.

DATED this 22nd day of April, 2010.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge